In the Matter of The Proposed Activation of the MINNESOTA JOINT UNDERWRITING ASSOCIATION and the Market Assistance Plan to Insure Specified Classes of Business (JUA III).

Nos. CX–87–319, C4–87–333.

Court of Appeals of Minnesota.

Aug. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., John C. Bjork, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Com'r of Commerce.

Bruce E. Goldstein, Minneapolis, for relators Nat. Truck Underwriting Managers, Inc.

Darron C. Knutson, John A. Knapp, St. Paul, for relators American Ins. Assn., Surety Assn. of America, Minn. Surety Assn., U.S. Fidelity and Guar. Co., Fidelity and Deposit Co. of Maryland, and Transamerica Ins. Co.

Considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

### OPINION

LESLIE, Judge.

Relators seek review of a ruling by the Commissioner of Commerce which continued activation of the joint underwriting association (JUA) and market assistance plan (MAP) beyond 180 days for grain buyers and public grain warehouse operators. We reverse.

## FACTS

In 1986 the Minnesota Legislature enacted the Minnesota Joint Underwriting Act (JUA Act), 1986 Minn.Laws ch. 455 §§ 20–41, now codified at Minn.Stat. § 62I.01–22 (1986). The purpose of the act is described as follows:

[T]o provide insurance coverage to any person or entity unable to obtain insurance through ordinary methods if the insurance is required by statute, ordinance, or otherwise required by law, or is necessary to earn a livelihood or conduct a business and serves a public purpose.

*Id.* § 62I.02, subd. 1. The act establishes two programs, the market assistance plan (MAP) and the joint underwriting association (JUA), to assist Minnesota persons or entities in obtaining mandatory insurance coverage. The Commissioner of Commerce must activate the JUA and MAP at any time he "deems it necessary to provide assistance with respect to the placement of general liability insurance coverage on Minnesota risks for a class of business." Minn.Stat. § 62I.21. The JUA and MAP are activated for 180 days, after which a hearing is held to determine whether activation is necessary beyond the 180 day period. *Id.*

Any person or entity in Minnesota who has been refused insurance and who desires assistance under the programs must file an application simultaneously with the MAP and JUA. The MAP committee will attempt to obtain coverage for the applicant from participating insurers or the private market, and if successful, "the applicant will be deemed to not be qualified to participate in the [JUA] and coverage, if any, shall be terminated." § 62I.10, subd. 9. If the MAP is unsuccessful in locating insurance for the applicant, and if the applicant meets certain standards set forth in the act, the JUA will issue the necessary policy. Minn.Stat. § 62I.15.

Every insurer authorized to write property and casualty insurance in Minnesota must be a member of the JUA. Minn.Stat. § 62I.02, subd. 1. A member must participate in the association's losses and expenses "in the proportion that the direct written premiums of the member bears to the total aggregate direct written premiums written in this state by all members." Minn.Stat. § 62I.07.

On December 16–19, 1986, an administrative hearing was held to determine whether to continue the JUA and MAP beyond 180 days for certain classes of businesses, including grain buyers and grain warehousemen. Three grain buyers/public grain warehouse operators testified at the hearing, claiming that extension of the JUA and MAP for their class members was necessary because they were unable to obtain grain storage and buyers' bonds through ordinary means, and the bonds were either required by law or necessary to earn a livelihood or conduct a business and served a public purpose. Following the hearing, the administrative law judge (ALJ) determined that the legislature had intended to include bonds as "insurance" for JUA and MAP purposes. The ALJ also concluded that the grain buyers and warehousemen had sufficiently demonstrated that the Commissioner should continue activation of the JUA and MAP for their classes beyond the 180 days. The Commissioner adopted both conclusions.

## ISSUES

1. Did the legislature intend to include grain buyers and warehousemen's bonds as "insurance" for purposes of the JUA Act?

2. Was testimony by only three members of the classes sufficient to establish that the JUA and MAP should be continued for those classes beyond the 180 days?

## ANALYSIS

### I.

Relators claim that activation of the JUA and MAP for grain buyers and public grain warehouse operators was improper because the legislature did not intend that the term "insurance" as used in the JUA Act, should include surety bonds. More specifically, relators point to Minn.Stat. § 62I.21, which refers to "general liability insurance coverage", and argue that bonds are not a form of general liability insurance.

The object of all statutory construction is to ascertain the intent of the legislature. Minn.Stat. § 645.16 (1986). An agency's construction of its own statutes enjoys a presumption of correctness, due to the agency's presumed expertise, knowledge, training, education and experience, *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977); nevertheless, deference need not be paid where, as here, there are compelling indications that the agency's interpretation is wrong. *See Buhs v. State, Department of Public Welfare*, 306 N.W.2d 127, 129 (Minn.1981). Contrary to the Commissioner's conclusion, in the present context bonds simply are not the equivalent of general liability insurance.

In order to obtain a bond, a person or entity must generally post collateral. Collateral is required by a bonding company because, by definition, the relationship assumes that a surety who assumes liability to a third party is entitled to indemnification by the principal:

A surety is any person who, being liable to pay a debt, is entitled, if it is enforced against him, to be indemnified by some other person who ought himself to have paid it before the surety was compelled to do so.

*Wendlandt v. Sohre*, 37 Minn. 162, 163, 33 N.W. 700, 701 (1887). Requiring collateral ensures that the surety will, in fact, be indemnified.

A surety has the option of requiring 100% collateral for the assumption of liability, if it is deemed necessary. By this means, the risk assumed by a surety may be virtually eliminated.

On the other hand, "insurance" is defined as follows:

"Insurance" is any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage.

Minn.Stat. 60A.02, subd. 3 (1986). Under ordinary circumstances, the insurer is not entitled to indemnification by the insured. Thus, collateral is not necessary, and is not a prerequisite for the issuance of an insurance policy.

This distinction is crucial to our determination that the authors of the JUA Act did not intend bonds to be included as "insurance." The JUA is not set up to act as a surety; rather, the act speaks in terms of "premiums." Nowhere does the JUA Act mention collateral; nor is there mention of indemnification by JUA policyholders.

One commentator has noted:

It has been frequently held that contracts of suretyship are regarded as those of "insurance" * * * and that the rights and liabilities of the parties are governed by the rules applicable to contracts of insurance. This is a rule governing the construction of such contracts, however, and is not intended to alter the normal incidents of a suretyship contract, such as the surety's recourse against the principal for losses paid by it. If a compensated surety's contracts were regarded as insurance for all purposes, it is apparent that the surety would not have such right of recourse * * *.

9 J. Appleman, *Insurance Law & Practice* § 5273 (1981) (footnotes omitted).

Compelling the JUA to issue bonds, as well as policies of insurance would, in certain instances, violate the suretyship relationship, since the JUA would be required to issue bonds for businesses unable to post sufficient collateral to obtain bonding in the private market.

Our decision that bonds are not insurance finds further support in Minn.Stat. § 62I.02, which provides in part:

Because the activities of certain persons or entities present a risk that is so great, the association shall not offer insurance coverage to any person or entity the board of directors of the association determines is outside the intended scope and purpose of the association because of the gravity of the risk of offering insurance coverage.

Issuance of bonds in the absence of sufficient collateral would present the type of risk which the authors of the Act intended

by the above language to exclude from coverage.

Finally, we note that statutes in *pari materia* covering the same subject matter should be construed in light of each other. *Lenz v. Coon Creek Watershed District,* 278 Minn. 1, 11, 153 N.W.2d 209, 217 (1967). Several other statutes relating to insurance specifically provide that bonds are to be included within their parameters. *See, e.g.,* Minn.Stat. § 60A.06, subd. 1(6); § 60A.23, subd. 5; § 70A.02, subd. 1. Within the JUA Act, however, there is no similar provision referring to bonds. We are persuaded that such omission was intentional, and that it was therefore the intent of the legislature to exclude bonds from coverage by the JUA.

## II.

■ Relators claim that testimony by three members of the classes of grain buyers and public grain warehouse operators was insufficient to continue the JUA and MAP for the entire classes beyond the 180 days. This claim has been addressed by our recently published opinion in *In the Matter of the Proposed Activation of the Minnesota Joint Underwriting Association and the Market Assistance Plan to Insure Specified Classes of Business,* 408 N.W.2d 599 (Minn.Ct.App.1987). There we stated:

> Repeatedly throughout the statute, the words "any person or entity" are used. *See* Minn.Stat. § 62I.02, subd. 1, .04, .08, .13, subd. 2 ("anyone") (1986). This manifests an intent by the legislature to permit one class member to institute extended activation for the entire class.

*Id.,* at 608.

## DECISION

The legislature did not intend to include bonds as "insurance," as that term is used in Minn.Stat. § 62I.02–22.

Reversed.